UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARGO MILTON,

        Petitioner,　　　　　　　　　Case Number: 15-12974
　　　　　　　　　　　　　　　　　　　Honorable David M. Lawson
v.

ANTHONY STEWART,

        Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner Margo Milton was convicted by an Oakland County, Michigan jury of armed robbery and conspiracy to commit armed robbery. She has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging those convictions and her prison sentences on the grounds of ineffective assistance of trial counsel for the failure to assert a duress defense, and because trial counsel failed to call two witnesses in her defense. The respondent urges the Court to deny the petition because the petitioner did not exhaust her state remedies by presenting her claims to the Michigan Supreme Court. The warden also argues that the claims lack merit. Because Milton was not denied the effective assistance of counsel, the Court will deny her petition.

I.

The charges against Milton stem from a February 22, 2011 robbery of a CVS drugstore in Southfield, Michigan. Milton was a supervisor at the store. The prosecutor's theory was that Milton helped plan and facilitate the robbery with Treymayne Thompson, Maharayah "Roger" Brown, and Roosevelt Tolber.

Venus Rogers testified at trial that she worked as a cashier at the CVS drugstore. Approximately ten minutes before closing on the date of the robbery, a man walked into the store

and pointed a gun at her. Rogers identified the man as Thompson. Thompson directed the other cashier, Rizwana Jaffri, to stand near Rogers. Thompson then led the two cashiers to the back office, and told them to call out for their supervisor.

Rogers testified that Milton (the supervisor) cracked the office door open and looked out. Thompson then pushed the door open and told Milton to open the safe. Milton emptied the money from the safe and gave it to Thompson. Thompson ordered the three women to lay on the floor. After it appeared on the security monitor that Thompson was gone, Jaffri called 9-1-1. Milton called the store manager.

Jaffri testified that she was working at a register next to Rogers when Thompson entered the store. After he pointed the gun at Rogers, Thompson told them to take him to the office. Jaffri testified that Milton was in and out of the store an unusual number of times on the date of the robbery. She also testified that Milton normally would have been in the front of the store before closing to help with the closing tasks, but she was not there at closing on the date of the robbery.

Fred Cahill, the regional manager for CVS, testified that he investigated the robbery. He said that the surveillance video of the incident (which was played for the jury) showed a couple noteworthy things about Milton's behavior. For one, it was unusual for Milton to pull the cash out of the front registers and put it in the safe prior to the store closing, as shown in the video. Also, it appeared from the video that Milton watched the security monitors while Thompson pointed the gun at the cashiers and led them to the office, without taking any action. Cahill also noted that Milton had done a lot of texting on her telephone immediately before the robbery.

Co-defendant Tremayne Thompson testified that he knew Milton from the neighborhood. About two days before the robbery, Thompson had a conversation with Roger Brown, Milton's

boyfriend. Brown told Thompson that he and his step-father had talked with Milton about robbing the drugstore. Thompson agreed to participate in the robbery.

On the day of the robbery, Brown picked up Thompson and drove him to Brown's house. Brown indicated that Milton had told him that it was a good day to commit the robbery. Brown told Thompson that he did not want to be the one to go inside the store because he had identifiable dreadlocks. At about 9:00 p.m., Thompson, Brown, and Tolbert drove to the drugstore. Milton came out of the store and got into the car. Milton told the men about a parking spot that was out of the view of the security cameras, and she described the placement of cameras near the front counter and the office.

After the discussion, Milton went back into the store and the three men returned to Brown's house. The men decided that Thompson would go into the store. Thompson testified that Brown gave him a .45 caliber handgun. The men returned to the store. Thompson went inside and saw a few customers, so he walked around for a couple minutes. He saw Milton at a register, and he waited for her to take the cash drawer to the back office. Thompson then approached the two cashiers with the handgun.

Thompson directed the cashiers to the back office, and after going inside, he told Milton to open the safe. Milton opened the safe and put what amounted to approximately $37,000 into a plastic bag. The three men went back to Brown's house and counted the money. Milton called and told Brown what happened after the police came. Thompson spent the night at Brown's house. Milton came over the next morning and received her share of about $10,000.

Thompson testified that he was arrested a few months later, and he ultimately pled guilty to armed robbery, conspiracy to commit armed robbery, and possession of a firearm during the

commission of a felony. On cross-examination, Thompson admitted that at some point during his case he decided to cut a deal, and he wrote a letter to the prosecution. He described his understanding of his potential sentencing exposure, told the jury that he was given a sentence that was substantially shorter, and acknowledged that he would not have received the reduction in sentence without volunteering to testify against Milton. Thompson also admitted on cross-examination that he wrote letters to Milton from prison calling her names, and stating that he used her to get time off of his sentence.

Following closing arguments and deliberations, the jury found Milton guilty of armed robbery, conspiracy to commit armed robbery, and commission of a felony with a firearm. She was sentenced to concurrent eight-to-twenty year prison terms on the robbery convictions.

At the sentencing hearing, Milton stated that at the time of the offense, "I was in fear for my life, for my parents' lives and the safety of my co-workers." Sent. Tr [dkt. 5-6] at 14 (Pg ID 396). When she was interviewed for the presentence report, Milton contended that she participated in the crime because she had been threatened by Thompson. Milton stated that her father owed Thompson money for drugs. The trial court responded to these allegation before imposing sentence:

> I know that her proffered excuse was that she was threatened. The court's view is that that's without merit. The record suggests she got a cut on this recovery, that her cut was ten grand. And that's not a person that as she's alleging in advance was coerced into all of this. It just simply isn't. And her conduct on the night of viewed on the videotape suggests and corroborates not what Ms. Milton advances but what her co-defendant and co-conspirator [] testified to that she was an active participant in this armed robbery and she got a cut of it.

*Id.* at 18-19 (Pg ID 398-99).

After the petitioner filed her direct appeal in the Michigan Court of Appeals, her appellate lawyer filed a motion for new trial in the trial court, asserting that trial counsel was ineffective by

not raising a duress defense. The trial court heard argument on Milton's motion and denied it. The trial judge noted that defense counsel considered a duress defense, as evidenced by his untimely notice presenting that defense on the morning of trial. The judge stated that it did not foreclose defense counsel from revisiting the defense, but that counsel reasonably chose instead to pursue a defense that the petitioner was not involved in the crime and that Thompson's testimony was not credible. And it appears that the prosecutor was prepared to waive the timeliness issue, if the petitioner had chosen to pursue that defense.

The petitioner subsequently filed a motion to remand in the Michigan Court of Appeals, asserting that trial counsel was ineffective by not calling Milton's father, Kenneth Milton, to corroborate a duress defense, and Maharayah Brown to testify that he was not involved and did not provide the gun used in the robbery. The motion was supported by a notarized letter from Brown, claiming that he was falsely accused of being involved in the crime by Thompson. The motion was also supported by the affidavit of Kenneth Milton, who stated he was indebted to drug dealers who knew that the petitioner was his daughter. The Michigan Court of Appeals denied the motion to remand. *People v. Milton*, No. 316999, 2014 WL 4160349, at *2 (Mich. Ct. App. Aug. 21, 2014).

The petitioner then filed a brief on appeal in the Michigan Court of Appeals, raising the following claims:

> I. The trial court erred in denying defendant's motion for new trial where trial counsel provided constitutionally ineffective assistance of counsel.
>
> II. Trial counsel's failure to investigate Kenneth Milton and Maharaya[h] Brown as potential defense witnesses constitutes ineffective assistance of counsel as to the duress.
>
> III. The prosecutor failed to present sufficient evidence to sustain a conviction for felony firearm in violation of defendant's state and federal constitutional rights to be free of conviction in the absence of proof beyond a reasonable doubt.

> IV. The trial court violated defendant's due process rights at sentencing by mis-scoring Offense Variable 8 of the sentencing guidelines.

The Michigan Court of Appeals affirmed the petitioner's convictions for armed robbery and conspiracy to commit armed robbery, but it reversed her conviction for commission of a felony with a firearm. *Milton*, 2014 WL 4160349. The petitioner attempted to file a late application for leave to appeal in the Michigan Supreme Court, but it was rejected as untimely filed.

Milton timely filed her habeas petition through counsel, raising her two claims of ineffective assistance of counsel. The respondent argues in his answer that the petitioner did not exhaust state remedies because she failed to present her claims to the Michigan Supreme Court. He also insists that the claims lack merit.

The exhaustion rule is not a jurisdictional requirement, *Castille v. Peoples*, 489 U.S. 346, 349 (1989), and "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). The Court will address the merits of both claims.

## II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). Because Milton filed her petition after the AEDPA's effective date, its standard of review applies. Under that statute, if a claim was adjudicated on the merits in state court, a federal court may grant relief only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established

Federal law, as determined by the Supreme Court of the United States," or if the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the *dicta*, of [the Supreme] Court's decisions." *White v. Woodall*, --- U.S. ---, 134 S. Ct. 1697, 1702 (2014) (internal quotation marks and citations omitted). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than *de novo* review. The AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be "given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (finding that the state court's rapid declaration of a mistrial on grounds of jury deadlock was not unreasonable even where "the jury only deliberated for four hours, its notes were arguably ambiguous, the trial judge's initial question to the foreperson was imprecise, and the judge neither asked for elaboration of the foreperson's answers nor took any other measures to confirm the foreperson's prediction that a unanimous verdict would not be reached" (internal quotation marks and citations omitted)); *see also Leonard v. Warden, Ohio State Penitentiary*, 846 F.3d 832, 841 (6th Cir. 2017); *Dewald v. Wriggelsworth*, 748 F.3d 295, 298-99 (6th Cir. 2014); *Bray v. Andrews*, 640 F.3d 731, 737-39 (6th Cir. 2011); *Phillips v. Bradshaw*, 607 F.3d 199, 205 (6th Cir. 2010); *Murphy*

*v. Ohio*, 551 F.3d 485, 493-94 (6th Cir. 2009); *Rockwell v. Yukins*, 341 F.3d 507, 511 (6th Cir. 2003) (en banc). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011).

A.

The petitioner alleges that her lawyer's defective performance — failing to pursue a durress defense and failing to call certain defense witnesses — deprived her of her right to effective representation, which the Sixth Amendment guarantees.

A violation of the Sixth Amendment right to effective assistance of counsel is established when an attorney's performance was deficient and the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. The petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins*, 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 688) (internal quotation marks omitted).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability

sufficient to undermine confidence in the outcome." *Id*. at 694. Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable." *Id*. at 687.

Success on ineffective-assistance-of-counsel claims is relatively rare, because the standard for obtaining habeas corpus relief "is 'difficult to meet.'" *Woodall*, 134 S. Ct. at 1702 (quoting *Metrish v. Lancaster*, 569 U.S. 351, 358 (2013) (quoting *Richter*, 562 U.S. at 102)). The standard is "all the more difficult" on habeas corpus review because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (citations and quotation marks omitted). "[T]he question is not whether counsel' actions were reasonable," but "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Ibid*.

On direct review, after reciting the correct constitutional standard, the Michigan Court of Appeals rejected the petitioner's two allegations of ineffective assistance of counsel, writing:

> Milton argues that had defense counsel raised the defense of duress at trial, evidence would have been presented that she advised the police after the robbery that alleged coconspirator Tremayne Thompson threatened injury or death to her, her family, and her coworkers. Milton asserts that she would have provided testimony consistent with, but more detailed than, the information contained in the Presentence Investigation Report (PSIR). The PSIR notes in relevant part that Thompson allegedly approached Milton before the robbery and told Milton that her father, "a prior drug addict, had owed him $80,000.00 and, if she did not help her [sic] rob her place of employment, 'her people would come up missing.'" Milton contends that the trial testimony of Thompson regarding letters he sent to Milton corroborates her assertion that Thompson made threats to her, and that other witnesses may have also provided testimony to corroborate her claim of duress. Milton's contentions, however, are unpersuasive. The threatening letter sent by Thompson to Milton was sent more than a year after the robbery occurred. Thus, such evidence would not support that "the fear or duress was operating upon the mind" of Milton at the time of the robbery. Additionally, Thompson testified at trial that he did not threaten Milton before the robbery. Thus, Milton has failed to rebut the strong presumption that defense counsel's decision to argue that Milton was not involved in the robbery

instead of raising the defense of duress was sound trial strategy. Thus, a new trial is not warranted.

Milton next argues that counsel was ineffective for failing to investigate her father, Kenneth Milton, and Maharayah Brown as potential witnesses. Specifically, Milton claims that her father could have provided evidence to support her duress defense, and that Brown could have provided impeachment evidence relevant to Milton's felony-firearm conviction. We find that relief is not warranted. The law of the case "doctrine provides that an appellate court's decision regarding a particular issue is binding on courts of equal or subordinate jurisdiction during subsequent proceedings in the same case." This same issue was previously raised before this Court by Milton in a motion for remand. In denying her motion for remand, this Court stated:

> [Milton] has failed to show that remand is appropriate for the trial court to reconsider its decision to deny [Milton's] motion for a new trial based on ineffective assistance of counsel. Although [Milton] has provided affidavits or statements from witnesses she believes could have supported an alternative defense than what trial counsel presented at trial, [Milton] has not addressed or shown that she can overcome the presumption that trial counsel rejected calling the witnesses for strategic reasons and that counsel otherwise pursued a valid trial strategy.

Thus, pursuant to the law of the case doctrine, this argument must fail.

*Milton*, 2014 WL 4160349, *1-2 (footnotes omitted).

This decision faithfully applies the clearly established *Strickland* standard. The record shows that counsel considered a duress defense. On the first morning of trial, defense counsel requested that a duress instruction be read to the jury following trial. He acknowledged, however, that he had not yet determined whether he would actually present that defense, and it would depend on the evidence presented by the prosecution and whether the petitioner decided to testify in her own defense. He explained that if he presented a duress defense, it would come through cross-examination of Thompson and the testimony of the petitioner.

The prosecutor objected to the requested instruction on the grounds that defense counsel had not filed a pretrial notice, and the trial court made a "preliminary ruling" that no instruction would

be given. But the prosecutor equivocated on whether he would insist that the advance notice requirement be enforced. *See* Trial Tr. [dkt. #5-3] at 3-6 (Pg ID 147-148). After the prosecution rested, defense counsel told the court that he needed additional time to advise the petitioner on whether or not she should testify. Ultimately, the petitioner decided to exercise her Fifth Amendment right not to testify. Defense counsel argued in closing that the case "came down to credibility," and the prosecutor did not demonstrate beyond a reasonable doubt that the petitioner was a party to the robbery because Thompson's testimony was not credible.

It is clear from the record that trial counsel did not timely file a notice of presenting a duress defense. The petitioner asserts that it was this failure that led defense counsel to abandon the defense, and that it was not the result of his professional judgment. But that is not the only reasonable inference that can be drawn from the record. As the petitioner concedes, a duress defense would have required Milton to testify that she participated in the crime. That route would have exposed her to cross-examination by the prosecution with all the attendant risks. On the other hand, there were legitimate avenues to attack Thompson's credibility, and defense counsel used them during cross-examination.

Thompson testified that he initially intended to fight the charges, but at some point he reached out to the investigating detective in an attempt to cut a deal. Thompson admitted that he initially lied to the police. And he acknowledged that his sentence ended up at the low end of the sentencing guideline.

Thompson testified that, after he implicated Milton in a second statement to police, he told the detective that this second statement was a lie. He admitted that he would not have received the

sentencing reduction if he had not testified against Milton. He also admitted he failed to tell police about Milton receiving a cut of the robbery proceeds.

Thompson admitted that he wrote love letters to Milton from jail. He then wrote threatening letters to Milton after he started cooperating with the prosecution. Those letters included Milton's date of birth and social security number. Thompson testified that he was angry at Milton. He admitted, "I threatened her because I felt betrayed."

A criminal trial frequently requires defense counsel to make a number of strategic decisions. Where two reasonable but divergent paths are presented, reviewing courts studiously avoid second-guessing counsel's choices. In fact, *Strickland* requires a reviewing court to presume that defense counsel's conduct was not the product of deficient performance. "To counteract the natural tendency to fault an unsuccessful defense, a court reviewing an ineffective assistance of counsel claim must 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Nix v. Whiteside*, 475 U.S. 157, 165 (1986) (quoting *Strickland*, 466 U.S. at 689); *see also, Griffin v. McVicar*, 84 F.3d 880, 888 (7th Cir. 1996) ("[T]he mere fact that a defendant chooses one of two available defenses cannot establish ineffective assistance of counsel, even if the defendant makes a bad choice.").

In light of Thompson's testimony during cross-examination, it is only with the benefit of hindsight that Milton can now argue that her lawyer should have taken the more aggressive (and risky) strategy of having her admit her participation but argue that she did so under duress. After he completed the cross-examination of Thompson, defense counsel may have made a legitimate strategic decision to challenge the strength of the prosecutor's evidence, rather than present the affirmative defense. It was reasonable for the Michigan Court of Appeals to reach that conclusion.

B.

The petitioner also contends that her attorney was ineffective by failing to call her father to testify that he had drug debts, and that dangerous drug dealers knew he was Milton's father. That argument fairs no better.

"The failure to call favorable witnesses can amount to ineffective assistance where it results in prejudice to the defense," *Pillette v. Berghuis*, 408 F. App'x 873, 884 (6th Cir. 2010), but the Court "must presume that decisions of what evidence to present and whether to call or question witnesses are matters of trial strategy," *Cathron v. Jones*, 77 F. App'x 835, 841 (6th Cir. 2003) (citing *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002)).

Presentation of this evidence would have connected Milton to the crime, and although it would have helped support a defense of duress, as a practical matter it would have required defense counsel to abandon the defense that Thompson was not credible and that the prosecution failed to prove her involvement beyond a reasonable doubt.

Milton also wants to fault her attorney for failing to call Maharayah Brown. Brown wrote in his statement that he was falsely accused of being involved in the crime. But Brown's brief affidavit does not state whether he was available to speak with defense counsel before trial, and he does not state whether he was willing to testify at trial. The petitioner must establish that the omitted witness was available to defense counsel and would have been willing to testify at trial. Otherwise, a court has no way of knowing if the failure to call the witness was the product of an informed strategic decision by counsel, or the result of deficient performance. *Sowell v. Anderson*, 663 F.3d 783, 802 (6th Cir. 2011) (Batchelder, C.J., concurring in part and dissenting in part). In light of the inadequacy of Milton's proffer, the Michigan Court of Appeals reasonably concluded

that she failed to overcome the presumption that trial counsel rejected calling the witness for strategic reasons and that counsel otherwise pursued a valid trial strategy.

Because the Michigan Court of Appeals reasonably rejected Milton's claims of ineffective assistance of counsel, Milton has failed to demonstrate an entitlement to habeas corpus relief under 28 U.S.C. § 2254(d).

III.

The state courts' decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts. The petitioner has not established that she is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED.**

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: June 11, 2018

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on June 11, 2018.

s/Susan Pinkowski
SUSAN PINKOWSKI